IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

**YVONNE TINIE STRINGFIELD,**
**Individually and as Administrator of the**
**Estate of MARY  MARSH; JUDY  JONES;**
**LISA  JONES; and WALTER T. MARSH,**

        Plaintiffs,

  v.

**GGNSC TIFTON, LLC; GOLDEN LIVING,**
**INC.; and XYZ ENTITY d/b/a GOLDEN**
**LIVING CENTER TIFTON,**

      Defendants.

Civil Action No. 7:12-CV-18 (HL)

## ORDER

This case is before the Court on Defendants' Renewed Motion to Dismiss and Compel Arbitration. (Doc. 25). For the reasons discussed below, the motion is denied.

## I.    BACKGROUND

Plaintiff Yvonne Tinie Stringfield ("Stringfield") is the daughter of and estate administrator for Mary Marsh ("Marsh"). (Deposition of Yvonne Tinie Stringfield, p. 38). Marsh lived with both Stringfield and Marsh's other daughter, Plaintiff Lisa Jones ("Jones"), moving between the two homes every three months. (Id. at 13). This arrangement began in late 2008. (Response to Renewed Motion to Dismiss, p. 2). Marsh's daughters created this living arrangement to jointly care for their aging mother who recently underwent an appendectomy. (Stringfield dep., p. 14).

Although Marsh's daughters cared for her, Marsh gave neither daughter, nor anyone else, a power of attorney. (Id. at 16).

In 2009, Marsh was admitted to a Golden Living facility, Golden Living Kennestone, for rehabilitation after she fell and injured her head while living with Jones. (Response, p. 2). During this time, Jones notified Stringfield that she could no longer care for Marsh so Stringfield transferred Marsh to Golden Living Tifton to be closer to Stringfield's home. (Id., p. 2-3). Stringfield intended to move Marsh back to Stringfield's own home after she regained strength through rehabilitation. (Stringfield dep., p. 22).

At Golden Living Tifton, the administrator asked Stringfield to fill out Marsh's admissions paperwork, which Stringfield proceeded to do. (Id. at 24, 26). Marsh was not with Stringfield at any point while Stringfield filled out the paperwork and Stringfield did not ask Marsh any questions while filling it out. (Id. at 27). In fact, Stringfield did not expressly tell her mother she was filling out the documents, but assumed her mother knew. (Id. at 36). One of the documents that Stringfield signed was an arbitration agreement. (Doc. 25-3 – Resident and Facility Arbitration Agreement, p. 2). Stringfield signed her own name on the "Resident's Authorized Representative" line.   (Id.) She did not discuss the arbitration agreement with Marsh. (Stringfield dep., p. 36). The arbitration agreement states:

> The parties to this Arbitration Agreement acknowledge and agree that upon execution, this Arbitration Agreement becomes part of the Admission Agreement, and that the

2

> Admission Agreement evidences a transaction involving interstate commerce governed by the Federal Arbitration Act. It is understood and agreed by Facility and Resident that any and all claims, disputes, and controversies (hereafter collectively referred to as a "claim" or collectively as "claims") arising out of, or in connection with, or relating in any way to the Admission Agreement or any service or health care provided by the Facility to the Resident shall be resolved exclusively by binding arbitration….

(Doc. 25-3 – Resident and Facility Arbitration Agreement, p. 2).

Plaintiffs filed a complaint on December 14, 2011 alleging that while living at Golden Living Tifton, Marsh developed painful medical complications which resulted in her death. (Complaint, p. 4). Defendants removed the complaint to federal court and filed a Motion to Dismiss and Compel Arbitration (Doc. 8), claiming that Plaintiffs were bound by the arbitration agreement Stringfield signed under the theory of apparent authority. This Court denied the motion and allowed discovery on the issue of agency. Defendants have submitted a Renewed Motion to Dismiss and Compel Arbitration. (Doc. 25).  The question is whether Stringfield had apparent authority to bind her mother to arbitration by signing the arbitration agreement.

## II.    ANALYSIS

### A.    Apparent Agency

Defendant alleges that Stringfield had apparent authority to bind her mother to the arbitration agreement and so by signing the agreement, Stringfield created an enforceable arbitration agreement between Marsh and Golden Living Tifton.

A principal-agent relationship exists when a person authorizes another to act in his place, either expressly or impliedly. O.C.G.A. § 10-6-1. As an implied form of agency, apparent authority may arise "when the statements or conduct of *the alleged principal* reasonably cause the third person to believe that the principal consents to have the act done on his behalf by the purported agent." Brown v. Little, 227 Ga. App. 484, 487, 489 S.E.2d 596, 599 (1997)(emphasis in original). Therefore, while the words and actions of the principal can create apparent authority, those of the purported agent alone cannot. *See* Thompson v. General Motors Acceptance Corp., 193 Ga. App. 740, 741, 389 S.E.2d 20, 22 (1989). Furthermore, evidence of agency merely consisting of assumptions or inferences is insufficient to show that apparent authority exists. *See* Dunn v. Venture Building Group, Inc., 283 Ga. App. 500, 504, 642 S.E.2d 156, 159 (2007). The party alleging apparent authority maintains the burden of proving the agreement is enforceable. *See* Ashburn Health Care Center, Inc. et al. v. Poole, 286 Ga. App. 24, 25, 648 S.E.2d 430, 432 (2007).

Defendants contend Stringfield had apparent authority to bind Marsh because Marsh "knowingly allowed her daughter to manage and control her affairs." (Doc. 25-1, p. 9). However, the evidence in the record does not show that Stringfield helped Marsh with anything more than daily activities such as cooking and picking out clothing, aside from filling out nursing home admissions documents. Defendants do not define what they mean by "affairs," but the record does not indicate that Stringfield managed more than basic tasks for her mother. Helping with such tasks does not mean Stringfield had apparent authority to sign an arbitration agreement for Marsh. Furthermore, even if sufficient evidence showed that Stringfield did manage Marsh's affairs, managing affairs does not alone create apparent authority. As noted above, apparent authority is created by words and conduct of the principal to the third party. Therefore, to determine whether apparent authority exists, the Court must look to Marsh's interactions with Golden Living to analyze whether Marsh acted as if Stringfield was her agent.

Defendants argue that Marsh allowing Stringfield to sign her admissions documents led the admissions director at Golden Living Tifton to believe that Marsh authorized her daughter to bind her to the arbitration agreement. (Doc. 27, p. 5). However, the record does not indicate that Marsh gave Stringfield permission to sign paperwork for her. In fact, Stringfield testified that she and Marsh never discussed who would sign the paperwork. (Stringfield dep., p. 36). Stringfield further testified that she did not tell Marsh that she was going to sign

the paperwork for her, but rather assumed that Marsh knew. (Id.). Even if Marsh did give Stringfield permission, case law shows that allowing a person to sign admissions paperwork does not alone grant authority to sign an arbitration agreement.

In Gentry v. Beverly Enterprises-Georgia Inc., the United States District Court for the Southern District of Georgia determined that apparent authority to sign admissions documents does not extend to signing an arbitration agreement. 714 F.Supp.2d 1225, 1230 (S.D. Ga. 2009). In Gentry, a husband signed nursing home admissions paperwork for his wife, with her permission. Id. at 1229. The husband also signed an arbitration agreement included within the paperwork. Id. The defendant argued that by giving her husband permission to sign the admissions paperwork, the wife created an agency relationship, making the husband the wife's agent when he signed the arbitration agreement. Id. at 1229. The court determined that the defendant did not prove apparent authority existed for the husband to sign the arbitration agreement because the defendant failed to show that the wife knew about the agreement or specifically authorized her husband to sign that agreement. Id. at 1231.

Similarly, in Ashburn Health Care Center, Inc. v. Poole, a woman's husband signed admissions paperwork and an arbitration agreement when his wife was admitted to a nursing home. 286 Ga. App. 24, 24, 648 S.E.2d 430, 431 (2007). The defendant moved to compel arbitration based on the husband's signature to the arbitration agreement. Id. The court determined that because the

6

defendant did not show that the wife "knew about the arbitration agreement, authorized her husband to sign the document, or otherwise agreed to arbitrate claims arising out of her nursing home stay," apparent authority for her husband to serve as her agent with respect to the arbitration agreement did not exist. Id. at 26, 648 S.E.2d at 433.

Marsh was not with Stringfield while Stringfield signed the paperwork and Stringfield did not ask Marsh questions while she filled out the paperwork. (Stringfield dep., p. 27). Furthermore, Stringfield specifically stated in her deposition that she did not discuss the arbitration agreement with her mother. (Id. at 36). Defendants have not met the burden of proving an enforceable agreement was created when Stringfield signed the arbitration agreement. Without evidence that Marsh knew about the agreement and authorized her daughter to sign the agreement by conveying such authorization to Golden Living Tifton, insufficient evidence exists for the Court to determine that Marsh gave Stringfield apparent authority to bind her to arbitration. Without apparent authority, Stringfield did not act as Marsh's agent, but merely as a daughter helping her mother. The agreement that Stringfield signed does not bind Marsh to arbitration.

## B.    Enforceability of Arbitration Agreement

Defendants contend that the arbitration agreement is enforceable under contract principles even though Stringfield did not understand the contents of the agreement that she signed. (Doc. 25-1, p. 11). Defendants' argument invokes contract law applicable to a party who has authority to bind himself or herself in

contract, but this argument does not address the authority of one person to bind another. Without proof that Stringfield was authorized to bind Marsh to arbitration, arguments based on contract principles alone are not helpful.

### C.    Necessity of Arbitrator Involvement

Defendants contend that both parties agreed that an arbitrator should determine the validity of the arbitration clause. Defendants argue that the holding in Terminix International Company v. Palmer Ranch Limited Partnership applies, and thus an arbitrator rather than the court should decide the validity of the arbitration agreement because the parties "clearly and unmistakably" agreed to such a provision. 432 F.3d 1327, 1332 (11th Cir. 2005). However, that case is extremely different from facts at hand. The primary difference is that Terminix did not involve an unenforceable contract based on lack of agency. Instead, the agreement in Terminix was allegedly unenforceable based on remedial restrictions. Id. at 1331. In that case, both parties "clearly and unmistakably" signed the arbitration agreement. Here, however, Defendants have failed to prove an agency relationship. The Terminix parties had authority to bind themselves to arbitration, but here, the Court has determined Stringfield did not have authority to bind Marsh to arbitration. Because Marsh did not sign the arbitration agreement herself and Stringfield did not have authority to bind Marsh to the terms of the agreement, Marsh is not bound by any of the terms, including having arbitrability decided by an arbitrator.

## III.    CONCLUSION

For the reasons addressed above, Defendants' Renewed Motion to Dismiss and Compel Arbitration (Doc. 25) is denied. The parties are ordered to file their Rules 16/26 report no later than October 15, 2012.


**SO ORDERED**, this the 1st day of October, 2012.



*s/ Hugh Lawson*
**HUGH LAWSON, SENIOR JUDGE**


EdG